Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN ANTONIO MORALES,<br><br>        Defendant and Appellant. | A152525<br><br>(Napa County<br>Super. Ct. No. CR183187) |

Found by the Napa County Sheriff's Department in unauthorized possession of a white van, defendant Adrian Morales (Morales) was charged with several offenses, including unlawful driving or taking of a vehicle (Veh. Code, § 10851). In addition, the People alleged that Morales suffered three prior convictions in Nevada for robbery and conspiracy to commit robbery. At trial, a jury found Morales guilty on all counts. In a separate proceeding, the trial court determined that two of the three prior strike allegations against Morales were true. Morales was sentenced to 32 months in state prison.

Morales appeals, arguing on various grounds that his Vehicle Code[1] section 10851 conviction merited only misdemeanor punishment. In the alternative, Morales contends that the trial court violated his due process rights by failing to instruct the jury on a purported defense. Finally, Morales contends that the trial court reviewed an ambiguous record of his Nevada convictions in order to find true the prior strike allegations against

---

[1] All subsequent statutory references are to the Vehicle Code unless otherwise noted.

1

him, thus violating the Sixth Amendment to the United States Constitution. We agree with this final argument, remand on that basis, and otherwise affirm.

## BACKGROUND

On May 5, 2017, a woman was inspecting a piece of property on which her family was in escrow. She saw a large white van backed up to the garage door, which she found odd. A man (later identified as defendant, Adrian Morales) got out of the van and claimed to be there because of his interest in buying the property. When the woman took photos of the van and license plate, defendant became agitated and drove away. The woman called 911.

Napa County Sheriff's Deputy David Quigley was dispatched to investigate the call of suspicious activity involving the white van. Quigley spotted the van, and someone in its driver's seat, in a parking lot near the property where the 911 caller had originally seen it; Morales got out as Quigley approached. Quigley found drug paraphernalia on Morales, who said that a man named Shawn gave him the van to use because Morales was homeless. Morales was to return the van to Shawn in a few days. Morales was arrested and charged by information with felony unlawful taking or driving of a vehicle (§ 10851, subd. (a)), and other counts not relevant to this appeal. The information also alleged three prior felony convictions in Nevada for robbery and conspiracy to commit robbery.

At trial, employees of the company that owned the van, PACE Solano, testified that Morales did not work for PACE Solano and that neither defendant nor anyone else was authorized to drive the van that day. Because the van was not used frequently, PACE Solano was not even aware its van was missing until notified by law enforcement. No evidence established exactly when the van was stolen from PACE Solano, or by whom. When PACE Solano retook possession of the van, some of its seats were missing and its windows had been spray-painted black.

Consistent with the prosecution's theory and the evidence at trial, the verdict form referenced only unlawful driving of the vehicle, not unlawful taking. In closing argument, Morales's counsel argued that Morales was not guilty of unlawfully driving a

2

vehicle under section 10851, because Morales lacked the intent to deprive the owner of possession of that vehicle. The jury convicted Morales of all charges.

After Morales waived his right to a jury trial on his prior convictions, the trial court held a bench trial on the prior strike allegations, finding two of the three allegations to be true. The trial court sentenced Morales to 32 months in state prison: a 16-month sentence for his unlawful driving conviction, doubled to 32 months on the basis of one prior strike.

This appeal followed.

## DISCUSSION

Morales makes several arguments for reducing his section 10851 conviction to a misdemeanor or, in the alternative, for granting him a new trial on that count. First, Morales argues that the Supreme Court's decision in *People v. Page* (2017) 3 Cal.5th 1175 (*Page*), when properly understood, mandates only misdemeanor punishment for any violation of section 10851. Second, Morales contends that absurd consequences result from punishing the *theft* of a vehicle under section 10851 less harshly than the post-theft *driving* of a vehicle under the same section. Third, Morales alleges that such differential punishment violates the equal protection clauses of the United States and California Constitutions. Fourth, on the theory that Morales could have been convicted on the basis of aiding and abetting the initial taking of the vehicle, Morales argues that the trial court denied him due process of law by purportedly failing to instruct the jury on the respective elements of "Theft by Larceny" and "Aiding and Abetting." We reject all of these contentions.

We do, however, agree with Morales's fifth and final argument and thus hold that the true findings on the prior strike allegations should be reversed under *People v. Gallardo* (2017) 4 Cal.5th 120. Accordingly, we remand on that basis alone.

3

**I.** *Page* **Does Not Preclude Felony Punishment for Unlawful Driving of a Vehicle in Violation of Section 10851.**

Morales cites *Page*, characterizing as its "core holding" the proposition "that if conduct underlying a section 10851 conviction constitutes theft, the conviction is potentially a misdemeanor under Proposition 47." From there, Morales then argues that any violation of section 10851 constitutes theft. Morales thus reasons that the "core holding" of *Page* precludes felony punishment for his conviction under section 10851, notwithstanding the fact that he was convicted of unlawfully driving—not taking—a vehicle.

Section 10851, subdivision (a), provides for the punishment of "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle." (Veh. Code, § 10851, subd. (a).) Thus, assuming that a defendant's conduct concerns "a vehicle not his own," and occurs "without the consent of the owner thereof," section 10851, subdivision (a) may be violated in four different ways: (1) driving a vehicle with the intent to permanently deprive the owner; (2) driving a vehicle with the intent to temporarily deprive the owner; (3) taking a vehicle with the intent to permanently deprive the owner; and (4) taking a vehicle with the intent to temporarily deprive its owner. (*Ibid.*)

*Page* addressed whether defendants convicted of violating section 10851 are categorically ineligible for resentencing under the 2014 ballot initiative, Proposition 47. As the *Page* court explained, "Proposition 47 (the 'Safe Neighborhoods and Schools Act') reduced the punishment for certain theft- and drug-related offenses, making them punishable as misdemeanors rather than felonies. To that end, Proposition 47 amended or added several statutory provisions, including new Penal Code section 490.2, which provides that 'obtaining any property by theft' is petty theft and is to be punished as a misdemeanor if the value of the property taken is $950 or less." (*Page*, *supra*, 3 Cal.5th at p. 1179.)

4

In concluding that defendants convicted of violating section 10851 are not categorically ineligible for resentencing under Proposition 47, the *Page* court drew heavily from a previous decision, *People v. Garza* (2005) 35 Cal.4th 866 (*Garza*), in which the Supreme Court "recognized the distinction between the theft and non theft forms of the Vehicle Code section 10581 offense." (*Page*, *supra*, 3 Cal.5th at p. 1183.) Because theft "requires a taking with intent . . . to permanently deprive the owner of its possession" (*id.* at p. 1182), and "[b]y its terms, Proposition 47's . . . petty theft provision" (*id.* at p. 1183) covers only offenses where property is "obtained by theft" (*ibid.*), the *Page* court concluded that the language of Penal Code section 490.2 covers "the theft form of the Vehicle Code section 10851 offense [taking a vehicle with the intent to permanently deprive its owner of possession]" (*Page,* at p. 1183). In so ruling, *Page* followed *Garza*'s distinction between the theft and non-theft forms of violating section 10851—i.e., between *taking* the vehicle with the intent to permanently deprive the owner of possession and *driving* the vehicle where the driving occurs or continues after the theft is complete. (*Page,* at p. 1183, citing *Garza*, 35 Cal.4th at p. 871.)

Attempting to persuade us that *Page* may be turned on its head and read as a holding that all violations of section 10851 must be categorically designated as misdemeanors under Proposition 47, Morales contends that the distinction in *Garza* and *Page* between theft and non-theft forms of section 10851 violation is dicta and urges this court to reject it. Morales misreads *Page*. In support of this assertion, Morales points to Penal Code section 484, defining theft. On the grounds that Penal Code section 484 employs the term "drive away," Morales argues that driving a vehicle in violation of Vehicle Code section 10851 therefore constitutes theft. But the portion of Penal Code section 484, subdivision (a), that includes the term "drive away" is not describing different types of theft offenses. Rather, that clause simply lists the various ways one can commit larceny, forbidding people to "feloniously steal, take, carry, lead, or drive away the personal property of another." (Pen. Code, § 484, subd. (a); see, e.g., *People v. Gonzales* (2017) 2 Cal.5th 858, 864 [because California's first Penal Code in 1872 recognized Britain's division of theft into three distinct types, section 484

5

"defined larceny as 'the felonious stealing, taking, carrying, leading, or driving away the personal property of another' "]; *People v. Pico* (1882) 62 Cal. 50, 52–55 [upholding larceny conviction where defendant "drove away" a horse and buggy belonging to another, and thereafter sold the stolen horse].)

Morales also suggests that because embezzlement is a theft crime whose perpetrator need not intend to permanently deprive the property owner of possession, a violation of section 10851 in which the perpetrator intends only to temporarily deprive the vehicle's owner of possession constitutes theft too. This is a non sequitur. The mere fact that the embezzlement form of theft has no "permanent deprivation" requirement does not compel the conclusion that vehicle theft must necessarily be similar in this respect. Morales did not embezzle the van in question, so the question of embezzlement is of little relevance here.

In sum, Morales has shown no grounds for abandoning the *Garza/Page* schema in which taking a vehicle with the intent to permanently deprive its owner is a theft offense, while post-theft driving offenses under section 10851 are not. Thus, *Page* does not preclude felony punishment for Morales' section 10851 conviction based on unlawful driving of the PACE Solano van.

## II. No Absurd Consequences Result from Punishing the Theft of a Vehicle Under Section 10851 Less Harshly Than the Unlawful Driving of a Vehicle Under the Same Statute.

Morales argues that absurd consequences result from requiring misdemeanor punishment for theft of a vehicle with a value under $950 while allowing felony punishment for unlawfully driving the same vehicle. In so arguing, Morales notes what he considers to be two absurd results: (1) that "some defendants convicted of a less culpable act will still be subject to harsher felony sentences, while no one convicted of the most culpable act of stealing the vehicle ever will"; and (2) that "defendants [will have] the perverse incentive to incriminate themselves . . . and lie about criminal acts they did not commit in section 10851 cases involving low-value vehicles."

6

" ' " 'The literal meaning of the words of a statute may be disregarded to avoid absurd results . . . .' " [Citations.]' [Citation.] But the absurdity doctrine should only be used in ' "*extreme* cases . . . ." ' " (*People v. Bell* (2015) 241 Cal.App.4th 315, 351, fn. omitted (Bell).) The statute at issue here, Penal Code section 490.2, provides that "obtaining any property by theft where the value of the . . . property . . . does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor." Thus, Penal Code section 490.2 affects only theft offenses, while crimes that do not constitute theft fall outside of the scope of the statute. Inasmuch as post-theft driving is not a theft offense, *Page, supra,* 3 Cal.5th at page 1183, it is not touched by the plain meaning of Penal Code section 490.2.

Thus, Morales seeks to persuade this court that the plain meaning of Penal Code section 490.2 entails results so dire as to compel us to "rewrite the statute[ ] under the absurd consequences doctrine." (*Bell*, *supra*, 241 Cal.App.4th at p. 352.) We are not so persuaded. In the first place, to call vehicle theft "a more culpable act" than post-theft driving is to beg the question. As the People note, there are reasons to think that the opposite is true. Driving is an inherently dangerous activity, driving illegally even more so, and although the theft of a car is a single incident, driving a car without its owner's permission may be done many times, multiplying the threat to public safety.[2] Far from being absurd, then imposing harsher punishment on driving violations of section 10851 is entirely reasonable in this respect.

We also reject Morales's argument that to uphold the plain meaning of Penal Code section 490.2 results in the purportedly absurd consequence of establishing an incentive

---

[2] Moreover, *Page* makes clear that theft under section 10851 occurs when there is no " 'substantial break' " (*Page*, *supra*, 3 Cal.5th at p. 1188) between the driving of the car and the stealing of it, as would be the case when a car thief is caught driving the stolen car in the course of the theft or before it is "complete" (*id.* at p. 1183). Accordingly, post-theft driving necessarily assumes that the act of theft is complete and that the individual in possession of the stolen car has had a substantial amount of time since the theft, during which he or she might well—as here—damage the car or deprive the owner of possession for a longer period than one who steals a car and drives only briefly before being caught.

for a defendant to claim dishonestly that he stole a vehicle he did not, in fact, steal. As a preliminary matter, *Page* suggests that this type of perjury would be unavailing, as such false testimony would not, as defendant implicitly assumes, *require* a misdemeanor theft conviction if the prosecution's evidence also in fact established post-theft driving. (*Cf. Page*, *supra*, 3 Cal.5th at p. 1189 [where evidence shows post-theft driving, a defendant cannot establish eligibility for misdemeanor treatment of his offense "by declaring or testifying that he *also* stole the vehicle" (italics added)].)

Morales cites no authority for the proposition that a defendant's dubious incentive to commit perjury constitutes an absurd consequence, and it's easy to see why. For a defendant who is willing to lie, the incentive to do so is not even unusual, much less absurd. An innocent defendant who has not committed each element of a less serious crime may choose to enter a plea agreement in order to reduce his or her sentencing exposure in the event of a conviction after trial on a more serious one. Or a guilty defendant may testify falsely to try to avoid conviction altogether. While we recognize these unfortunate realities, we decline to treat the decision to commit perjury as a mere economic calculation. Those who testify under oath are required to tell the truth, regardless of any purported incentives. Accordingly, we find that no absurd consequences follow from construing *Page, Garza*, and the plain meaning of Penal Code section 490.2 to allow defendant's felony Vehicle Code section 10851 conviction to stand.

### III. Imposing Harsher Punishment for Unlawfully Driving a Vehicle than for Theft of the Same Vehicle Does Not Violate Equal Protection.

Morales also argues that it violates the equal protection clauses of the United States and California Constitutions to punish post-theft driving under section 10851 more harshly than to punish stealing the same, low-value vehicle under the same statute. In order to establish an equal protection claim, an appellant must show that the two classes receiving unequal treatment are similarly situated for purposes of the law challenged. (*People v. Morales* (2016) 63 Cal.4th 399, 408 citing *Cooley v. Superior Court* (2002)

29 Cal.4th 228, 253.)  "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified."  (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 (*Nguyen*).)  Generally, offenders who commit different crimes are not similarly situated.  (*People v. Doyle* (2013) 220 Cal.App.4th 1251, 1266; *cf. People v. Dillon* (1983) 34 Cal.3d 441, 476 fn. 23 [rejecting defendant's equal protection argument because felony murder and other types of first degree murder "are not the 'same' crimes"].)

Here, the two classes receiving unequal treatment under Penal Code section 490.2 are individuals who have committed different offenses.  As explained above, where a defendant is convicted under section 10851 for taking a vehicle with the intent to permanently deprive its owner of possession, the defendant suffers a theft conviction, but other convictions under that statute are not theft convictions.  (*Garza*, *supra*, 35 Cal.4th at p. 871.)  *Garza* made clear that stealing a vehicle and continuing to drive it after the theft is complete constitute "separate and distinct violations of section 10851(a)" (*Garza,* at p. 880), with the post-theft driving "properly regarded as a nontheft offense" (*id.* at p. 881).  And *Garza* itself recognized that different consequences may properly flow to defendants who violate section 10851 in different ways.  (*Garza,* at p. 881 [holding that a defendant convicted of post-theft driving under section 10851 may also be convicted of violating Penal Code section 496, whereas a defendant convicted of the theft form of section 10851 may not].)  In asking this court to compare persons convicted of vehicle theft to persons convicted of the different, "separate and distinct" violation of post-theft driving, Morales invites us to consider classes that are not similarly situated.  (*Garza*, at p. 880.)  Thus, having failed to establish that the unequally treated classes are similarly situated, Morales's "equal protection claim cannot succeed, and does not require further analysis."  (*Nguyen*, *supra*, 54 Cal.App.4th at p. 714.)

9

**IV.    Morales Was Not Denied Due Process by Any Purported Failure to Instruct the Jury on the Elements of "Theft by Larceny" or "Aiding and Abetting."**

Noting that a conviction for aiding and abetting the theft of the vehicle would have carried a lesser sentence than his conviction for unlawfully driving it, Morales argues that he was "depriv[ed] of a defense" by virtue of the trial court's purported failure to instruct the jury on the elements of "Theft by Larceny" and "Aiding and Abetting."[3]  We disagree.

"In the case of defenses, . . . a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Breverman* (1998) 19 Cal. 4th 142, 157, italics omitted.) Here, the defense theory of the case was that defendant lacked the requisite intent under section 10851, described in the trial court's jury instructions as the intent "to deprive the owner of possession or ownership of the vehicle for any period of time."  Assuming arguendo that admitting to stealing the vehicle can be called a "defense," because the jury instructions for "Theft by Larceny" require the intent "to deprive the owner . . . permanently/ [or] to remove it from the owner's . . . possession for . . . [an] extended . . . period of time," that purported defense would be inconsistent with Morales's theory of the case.  (CALCRIM 1800.)  Moreover, there was certainly not substantial evidence to support any instruction on theories of theft or aiding and abetting theft, as there was no evidence (as opposed to defendant's speculative theory) connecting "Shawn" and/or defendant to the actual theft of the car.  Thus, under the standard governing a trial court's duty to instruct sua sponte on defenses, no such duty existed here.  In sum, Morales's due process argument is meritless.

_____

[3] Morales emphasizes that he "has never claimed" that the trial court's purported failure to instruct concerned a lesser included offense under either the elements or accusatory pleading test or a lesser related offense within the meaning of *People v. Birks* (1998) 19 Cal.4th 108.  He cites, however, no authority for his "deprivation of a defense" theory, asserting only that it is not an attempt to evade *Birks*.

**V.     Under *Gallardo*, the Trial Court's Findings on the Prior Strike Allegations Should Be Reversed.**

With respect to the trial court's findings on the prior strike allegations, Morales argues, under the authority of *Gallardo*, that the trial court violated his Sixth Amendment right to a jury trial by relying on an ambiguous record consisting of guilty pleas concerning robberies committed in Nevada.  The People concede, and we accept the concession.

However, Morales's requested remedy—resentencing pursuant to Penal Code section 1170, subdivision (h), without retrial of the prior strike allegations—is inappropriate.  In reversing the trial court's findings on Gallardo's prior strike allegations, the *Gallardo* court noted that a "defendant's constitutional right to a jury trial sweeps more broadly than our case law previously recognized" (*Gallardo, supra,* 4 Cal.5th at p. 138), and accordingly remanded the case "to permit the People to demonstrate to the trial court, based on the record of the prior plea proceedings, that defendant's guilty plea encompassed a relevant admission about the nature of her crime" (*id.* at p. 139).  Because *Gallardo* was decided on December 21, 2017, some four months after the August 23, 2017, hearing, in which the trial court found true the prior strike allegations against Morales, the parties here are in a similar position to the parties in *Gallardo*.  Defendant may be correct that People will ultimately be unable to establish the requisite proof in accordance with *Gallardo*, but the prosecutor should be given the opportunity to do so.  Just as remand was the appropriate remedy in *Gallardo*, it is also the appropriate remedy here.

### DISPOSITION

The judgment on count one is affirmed.  The matter of the prior strike allegations is remanded to the trial court for a new determination in accordance with the opinion in *Gallardo*.

_____
BROWN, J.


WE CONCUR:


_____
STREETER, ACTING P. J.


_____
TUCHER, J.


*People v. Morales* (A152525)

12

Trial Court:   Napa County Superior Court

Trial Judge:   Hon. Mark

Counsel:

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Bruce M. Slavin, Deputy Attorney General for Plaintiff and Respondent.