Filed 5/7/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072647 |
| v. | (Super.Ct.No. RIF137825) |
| VICTOR SERRATO SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

1

Victor Serrato Sanchez was charged with first degree murder but pled guilty to voluntary manslaughter. He filed a petition under Penal Code section 1170.95[1] to vacate that conviction. The trial court denied the petition, concluding that Sanchez is ineligible for relief under section 1170.95 because he was not convicted of murder. Sanchez appeals from the trial court's order. We join the courts that have held that section 1170.95 does not apply to defendants convicted of voluntary manslaughter. (*People v. Flores* (2020) 44 Cal.App.5th 985, 997 (*Flores*); *People v. Turner* (2020) 45 Cal.App.5th 428, 438 (*Turner*); *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 (*Cervantes*).) We also reject Sanchez's argument that section 1170.95 violates equal protection. We accordingly affirm.

BACKGROUND

In 2010, Sanchez was charged with first degree murder with a gang enhancement allegation. (§§ 187, subd. (a), 186.22, subd. (b).) In 2011, the information was orally amended to add a second count of voluntary manslaughter, also with a gang enhancement allegation. (§§ 192, subd. (a), 186.22, subd. (b).) Sanchez pled guilty to voluntary manslaughter and admitted the truth of the gang enhancement and an out-on-bail enhancement. (§ 12022.1.) In the factual basis provided for the guilty plea, Sanchez admitted that he and fellow gang members confronted someone they thought to be a rival gang member, Sanchez and others yelled at the person, and others in Sanchez's group

---

**1** Further unlabeled statutory references are to the Penal Code.

assaulted the person, causing him to smash his head on the pavement. Sanchez was sentenced to an aggregate term of 23 years.

In 2019, following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), Sanchez petitioned for resentencing under section 1170.95. The trial court denied the petition, concluding that section 1170.95 provides relief for first degree murder convictions only.

DISCUSSION

A. *Overview of Senate Bill 1437 and Section 1170.95*

Senate Bill 1437 narrowed the scope of liability for first and second degree murder by altering the doctrines that had allowed convictions for those offenses in the absence of malice. Effective January 1, 2019, Senate Bill 1437 made that change by amending sections 188 and 189 to restrict the scope of first degree felony murder and to eliminate murder liability based on the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature also added section 1170.95 to the Penal Code. That provision creates a procedure for offenders previously convicted of felony murder or murder under a natural and probable consequences theory to obtain the benefits of these changes retrospectively. If the petitioner makes a prima facie showing of entitlement to relief under section 1170.95, subdivision (a), the petitioner is entitled to receive "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner

3

had not been previously been sentenced." (§ 1170.95, subd. (d)(1); see also *id.*, subd. (c).)

B. *Section 1170.95 and Voluntary Manslaughter*

Sanchez argues that he qualifies for resentencing relief under section 1170.95 as a person who "accepted a plea offer in lieu of a trial at which [he] could be convicted for first degree or second degree murder." (§ 1170.95, subd. (a)(2).) To reach that conclusion, he reads section 1170.95 as containing an ambiguity that he argues must be interpreted in his favor in order to avoid rendering some of the statutory language surplusage, which he claims would create an absurd result.[2] He further contends that the legislative intent of Senate Bill 1437 supports interpreting section 1170.95 as applying to those convicted of voluntary manslaughter. Two of our sister courts have rejected these arguments and concluded that section 1170.95 does not apply to those convicted of voluntary manslaughter. (*Flores*, *supra*, 44 Cal.App.5th at p. 997; *Turner*, *supra*, 45 Cal.App.5th at p. 438; *Cervantes*, *supra*, 44 Cal.App.5th at p. 887.) We agree with those decisions.

We independently review questions of statutory interpretation. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) In interpreting a statute, our "'fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*People v. Ruiz*

---

[2]    In a summary section preceding the analysis in his opening brief, Sanchez seems to argue that he qualifies for relief under section 1170.95 under the "plain language" of the statute. That is inconsistent with Sanchez's analysis of the issue, though, which is based instead on the statutory language containing an ambiguity. In any event, we necessarily look first at the plain language of the statute.

4

(2018) 4 Cal.5th 1100, 1105.) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*Ibid.*) "'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.'" (*Id.* at p. 1106.)

Section 1170.95 allows "[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition" to seek to have that "murder conviction vacated and to be resentenced on any remaining counts" if certain conditions are met. (§ 1170.95, subd. (a).) Subdivision (d) of section 1170.95 reiterates that the available relief under the section is the vacating of a "murder conviction." (§ 1170.95, subd. (d)(1)-(2).) No reference to voluntary manslaughter appears in section 1170.95. In sum, these "petitioning prerequisites and available relief all presuppose a murder conviction." (*Turner*, *supra*, 45 Cal.App.5th at p. 439.) By its plain language, section 1170.95 thus makes resentencing relief available only to qualifying persons convicted of murder.

Other courts have interpreted the plain language of section 1170.95 the same way. (*Flores*, *supra*, 44 Cal.App.5th at p. 993 ["Through its repeated and exclusive references to murder, the plain language of section 1170.95 limits relief only to qualifying persons who were convicted of murder"]; *Turner*, *supra*, 45 Cal.App.5th at pp. 435-436 ["Relying on the clear language of the statute, courts including ours have concluded that

5

section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter"]; *Cervantes*, *supra*, 44 Cal.App.5th at p. 887 ["The plain language of the statute is explicit; its scope is limited to murder convictions"].)

Acknowledging that section 1170.95 does not reference manslaughter convictions, Sanchez nevertheless contends that section 1170.95 applies to those convicted of voluntary manslaughter by plea because of an alleged ambiguity in one of the three qualifying conditions that must be met under subdivision (a) of section 1170.95. One of those conditions requires the petitioner to have been "convicted of first degree or second degree murder following a trial or *accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.*" (§ 1170.95, subd. (a)(2), italics added.) Sanchez claims that because the plea portion of this provision does not expressly mention that the guilty plea had to be to murder, section 1170.95 must apply to defendants like him who pled guilty to manslaughter to avoid being convicted of murder at trial. The argument is unpersuasive because it "ignores the introductory language in section 1170.95, subdivision (a) that limits petitions to persons 'convicted of . . . *murder*.'" (*Turner*, *supra*, 45 Cal.App.5th at p. 436.) Subdivision (a) of section 1170.95 provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory" may petition to have that "murder conviction vacated" "when all of the following conditions apply." (§ 1170.95, subd. (a).) Consequently, only a person who has been "convicted of felony murder or murder under a natural and probable consequences theory" may petition for relief under section

6

1170.95 in the first place.  (§ 1170.95, subd. (a).)  If that prerequisite is not met, then fulfillment of the subparts in subdivision (a) is not relevant.

Relying on this same qualifying language in subdivision (a)(2) of section 1170.95, Sanchez maintains that if the Legislature intended to limit section 1170.95 to those convicted of murder "it would have been unnecessary for the Legislature to distinguish between those convicted by trial and those convicted by guilty plea."  He contends that interpreting section 1170.95 as being limited to those convicted of murder therefore would render most of the language in that qualifying provision surplusage.  We do not agree.  Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply.  Regardless of whether that clarification was necessary, "'the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision.'" (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 929.)  Express statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage.  (*Ibid.*)  Such clarification "may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning."  (*Ibid.*)

It is axiomatic that the ""language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."" (*Cervantes*, *supra*, 44 Cal.App.5th at p. 887.)  Sanchez claims that our interpretation produces an absurd result by allowing more culpable individuals to seek

relief under section 1170.95. We agree with the other courts that have rejected the same argument. (*Ibid.*; *Flores*, *supra*, 44 Cal.App.5th at pp. 996-997; *Turner*, *supra*, 45 Cal.App.5th at pp. 438-439.) As the court noted in *Turner*, "[t]he punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter . . . permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors." (*Turner*, at p. 439; § 193, subd. (a).) Construing section 1170.95 to exclude those convicted of voluntary manslaughter by plea agreement therefore does not "produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability."[3] (*Turner*, at p. 439.)

For all of these reasons, we conclude that section 1170.95 relief is not available to those offenders who pled guilty to voluntary manslaughter.

---

**3** Because section 1170.95 is clear and unambiguous, we need not consult its legislative history to determine the statute's meaning. (*Flores*, *supra*, 44 Cal.App.5th at p. 997, fn. 5.) In any event, we agree with those courts that have concluded that the legislative history of Senate Bill 1437 confirms that the Legislature was concerned only with providing relief to those who were convicted of felony murder or of murder on a natural and probable consequences theory. (*Cervantes*, *supra*, 44 Cal.App.5th at p. 887; *Turner*, *supra*, 45 Cal.App.5th at pp. 436-438.) Sanchez's arguments to the contrary are unavailing. He does not point to any express language about manslaughter in the legislative history. Instead, he points out that expanding section 1170.95 to include those convicted of voluntary manslaughter by plea supports the general legislative intent of ensuring that punishment is better aligned with a defendant's level of culpability and saving incarceration costs by decreasing the number of inmates serving long sentences. That does not show that the Legislature contemplated granting the relief afforded by section 1170.95 to those convicted of voluntary manslaughter by plea. At most, it shows that including those individuals would also serve those purposes. But that it is not the approach that the Legislature chose.

C. *Equal Protection*

Sanchez contends that section 1170.95 violates equal protection under the state and federal Constitutions unless it is "interpreted to provide relief to anyone who pleaded guilty to a homicide offense in order to avoid trial on a murder charge premised on a theory under the natural and probable consequences doctrine." We do not agree.

"The first step in an equal protection analysis is to determine whether the defendant is similarly situated with those who are entitled to the statutory benefit." (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888.) Sanchez, like the defendant in *Cervantes*, was "convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment." (*Ibid.*) In general, "offenders who commit different crimes are not similarly situated." (*People v. Morales* (2019) 33 Cal.App.5th 800, 808.) Sanchez therefore "has failed to establish the threshold requirement of an equal protection claim: disparate treatment of similarly situated persons." (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 688.)

Sanchez contends that this is not the distinction that matters. Instead, he claims that he is similarly situated to those who were charged with first degree murder based on a natural and probable consequences theory but who pled guilty to murder instead of voluntary manslaughter. Those defendants are now entitled to relief under section 1170.95. But those, like him, who pled guilty to voluntary manslaughter are not, even though both sets of defendants pled guilty to avoid trial on a murder charge based on the now inapplicable natural and probable consequences doctrine.

9

Assuming that those two groups of persons are similarly situated but are being treated differently, the equal protection challenge still fails. Sanchez does not dispute that we "apply rational basis review to determine whether the Legislature's limitation of the ameliorative provisions of Senate Bill 1437 was justified." (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1111 (*Lopez*).) There therefore "is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53 (*Rajanayagam*).)

Here, the Legislature could have reasonably concluded "that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the [natural and probable consequences theory] could be excessive and reform was needed only there." (*Cervantes*, *supra*, 44 Cal.App.5th at p. 888.) "'The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.'" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 840.)

We reject Sanchez's assertion that the distinction was not reasonable in light of the Legislature's intent to save money on the costs of incarceration. Whether expanding section 1170.95 to include those who pled guilty to voluntary manslaughter would result in more savings is irrelevant. That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make. (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 55-56.) It does not demonstrate that it was irrational to distinguish

10

between those convicted of murder by plea and those convicted of voluntary manslaughter by plea.  (*Ibid.*)

DISPOSITION

We affirm the order denying the section 1170.95 petition.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.
FIELDS
J.