Filed 10/7/20  P. v. Story CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090227 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE003002) |
| v. | |
| TROY STEVEN STORY, | |
| Defendant and Appellant. | |

Defendant Troy Steven Story was arrested after a police officer observed him driving a car that had been reported stolen.  At the time of his arrest, defendant possessed a keyring that included two shaved keys, which are tools commonly used to start older-model cars.  A jury found defendant guilty of unlawfully driving a vehicle (Veh. Code, § 10851, subd. (a))[1] and of possessing burglary tools (Pen. Code, § 466).

---

[1] Further undesignated statutory references are to the Vehicle Code.

On appeal, defendant contends (1) his conviction for unlawfully driving a vehicle must be reduced to a misdemeanor because failure to do so would result in absurd consequences and deprive him of equal protection under the law; (2) the evidence is insufficient to support his conviction for unlawfully driving a vehicle because the prosecution failed to prove he had specific intent to commit the crime; (3) his prior prison term enhancements must be stricken pursuant to the recently-enacted Senate Bill No. 136 (2019-2020 Reg. Sess.); and (4) the trial court abused its discretion by imposing the upper term on the unlawfully driving a vehicle count.  We agree only that defendant's prior prison term enhancements must be stricken, and we remand for resentencing.  We otherwise affirm the judgment.

## FACTS AND PROCEEDINGS

*Factual Background*

A car owner reported to police that his 1992 Honda Accord LX was stolen while parked in front of a residence.  Two days later, police officers located the Honda parked on a different street.  While observing the area, an officer saw defendant get into the car, turn it on, drive it a few car lengths, and back it into a driveway.  Officers told defendant to drop a keyring he held, and they detained him.  The keyring included approximately 15 keys, two of which were shaved or filed.  Shaved keys have been filed down to make them smoother; they are often used to steal older model vehicles.  An officer was able to start the car using one of the shaved keys with "[n]o trouble at all"; he did not attempt to start the car with any of the non-shaved keys on defendant's keyring.

Officers could not determine whether defendant had initially stolen the car from the owner.  But neither the owner nor the owner's girlfriend knew defendant or gave him permission to drive the car.  The only keys to the car were in the owner's possession and in his mother's safe.  The driver's side door keyhole showed signs of damage.

2

Neither the car's license plates nor its vehicle identification number (VIN) had been removed. At the time of defendant's arrest, there were two other people and two other vehicles at the residence. Neither of the other cars at the residence had been reported stolen.

The Honda had approximately 172,000 miles on it and a dent in the fender sustained before the theft. The owner had purchased the car from his uncle three months prior for $800 as a partial gift. The owner testified he thought the car was worth more than $800, he would not have sold it for less than $950, and he would have sought between $1,600 and $1,700 for the car. An officer valued the car at $1,159 by referring to the Kelly Blue Book, a service that approximates car values.

*Procedural History*

The jury found defendant guilty of unlawfully driving a vehicle (§ 10851, subd. (a); count one) and possession of burglary tools (Pen. Code, § 466; count three). The jury was unable to reach a verdict as to whether the car's value was greater than $950, which the trial court had submitted to the jury as a separate finding. The jury was also unable to reach a verdict on one count of receiving stolen property (Pen. Code, § 496d, subd. (a); count two). The court declared a mistrial as to count two (as well as the valuation question) and subsequently granted the prosecution's motion to dismiss the charge.[2]

In bifurcated proceedings, the jury found true the allegations that defendant was previously convicted of a serious felony (Pen. Code, §§ 422, 1192.7) and a vehicle offense as described in Penal Code section 666.5, subdivision (a). The jury also found true the allegation defendant had served three prior prison terms. (*Id..*, § 667.5, subd. (b).)

---

[2] At sentencing, the court granted the prosecution's motion to dismiss the receiving stolen property charge.

The trial court denied defendant's motions to strike the prior strike for purposes of sentencing[3] and to reduce his conviction on count one to a misdemeanor. The court sentenced defendant to the upper term of four years for count one (§ 10851, subd. (a); Pen. Code, § 666.5, subd. (a)), doubled to eight years for defendant's prior strike conviction (Pen. Code, § 667, subd. (e)(1), 1170.12, subd. (c)(1)). Additionally, the court imposed a one-year prior prison term sentence enhancement and purported to stay the other two prior prison term enhancements.[4] (Pen. Code, § 667.5, subd. (b).) The court imposed only the mandatory fees on count three, possession of burglary tools, and no additional term of incarceration.

Defendant timely appealed his conviction. Additional facts will be set out in the Discussion as necessary.

### DISCUSSION

### I

### *Proposition 47*

Defendant contends that Penal Code section 490.2, enacted by the voters through Proposition 47 and interpreted by our Supreme Court as reducing to a misdemeanor the *theft* of a vehicle worth $950 or less, must be applied to post-theft *driving* of a vehicle to avoid creating absurd consequences and violating his right to equal protection under the law. We disagree.

A. *Penal Code Section 490.2 And Vehicle Code Section 10851*

In November 2014 California voters approved Proposition 47, the Safe Neighborhoods and Schools Act. Proposition 47 added section 490.2 to the Penal Code,

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[4] The trial court was required to either impose or strike the enhancement; it was not permitted to stay the enhancement. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.) However, because we strike the enhancement, *post*, the error is now moot.

which "mandates misdemeanor punishment for a defendant who 'obtain[ed] any property by theft' where the property is worth no more than $950."[5] (*People v. Page* (2017) 3 Cal.5th 1175, 1183.)

Proposition 47 did not specifically reference Vehicle Code section 10851 as among the statutes affected by the bill. Vehicle Code section 10851, subdivision (a) makes it a crime if a person "*drives* or *takes* a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle." (Italics added.) California courts have long distinguished between the "taking" and "posttheft driving" forms of the statute. (*People v. Garza* (2005) 35 Cal.4th 866, 871.)

Following the passage of Proposition 47, our Supreme Court concluded Penal Code section 490.2 reduces convictions of Vehicle Code section 10851 to misdemeanor offenses where the defendant "obtain[ed] an automobile worth $950 or less by theft . . . ." (*People v. Page*, *supra*, 3 Cal.5th at p. 1187.) The court observed, "To establish eligibility for resentencing on a theory that a [ ] section 10851 conviction was based on theft, a defendant must show not only that the vehicle he or she was convicted of taking or driving was worth $950 or less ( [Pen. Code,] § 490.2, subd. (a)), but also that the conviction was based on theft of the vehicle rather than on posttheft driving . . . ." (*Id.* at p. 1188.) In *People v. Bullard* (2020) 9 Cal.5th 94, at pages108 to 109, our Supreme Court decided a question left open by *Page* and concluded that Proposition 47 applies to

---

[5] Penal Code section 490.2, subdivision (a) provides in part: "Notwithstanding [Penal Code] Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."

5

vehicle takings where the defendant either intended to deprive the owner of the vehicle temporarily or permanently.

In *People v. Lara* (2019) 6 Cal.5th 1128, at pages 1135 to 1137, our Supreme Court concluded Proposition 47 only applies to convictions under section 10851 for theft--not post-theft driving--of low-value vehicles. The court stated the rule, "While a theft-based violation of [ ] section 10851 may be punished as a felony only if the vehicle is shown to have been worth over $950, a violation committed by posttheft driving may be charged and sentenced as a felony regardless of value." (*Id.* at p. 1136.) Then the court rejected defendant's contention that there was insufficient evidence to support his conviction for post-theft driving under section 10851 where there was no evidence of the value of the vehicle. (*Id.* at p. 1137.)

B. *Procedural Background*

Before trial, the prosecutor asserted she was proceeding on the prosecution of count one--unlawfully taking or driving a vehicle under section 10851--under the theory defendant committed the offense by driving the Honda without consent rather than by taking the car. The prosecutor contended that convicting defendant of a felony under this theory did not require her to prove the value of the car exceeded $950 following passage of Proposition 47. Defendant responded the prosecution was required to prove the $950 value of the property to sustain a felony conviction regardless of the theory. The court agreed with the prosecution and denied defendant's request to make the $950 threshold an element of the crime charged in count one. But the court agreed to instruct the jury to determine whether the prosecution had proved the value of the property as greater than $950 to preserve the issue for appeal if the jury found defendant guilty of either count one or count two. The jury was unable to reach a verdict as to whether the car's value was greater than $950. The trial court declared a mistrial as to that finding.

C. *Absurd Consequences*

The parties agree *Page*, *Lara*, and *Bullard* conclusively hold that Penal Code section 490.2 does not act to reduce post-theft driving violations of Vehicle Code section 10851 to misdemeanors.  But none of those cases directly addresses the issue defendant raises here:  whether the absurd consequences doctrine and the equal protection clauses of the United States and California Constitutions prohibit disparate treatment of post-theft driving of a low-value car and taking or theft of a similar car.  We consider defendant's arguments in turn.

"In general, it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend.  To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment.  [Citation.]"  (*In re Michele D.* (2002) 29 Cal.4th 600, 606.)  " '[T]he absurdity doctrine should only be used in " '*extreme* cases . . . .' " '  [Citation.]"  (*People v. Morales* (2019) 33 Cal.App.5th 800, 806 (*Morales*).)

We disagree with defendant that application of the statute leads to absurd results.  As stated in *Morales*, *supra*, 33 Cal.App.5th at page 807, "Driving is an inherently dangerous activity, driving illegally even more so, and although the theft of a car is a single incident, driving a car without its owner's permission may be done many times, multiplying the threat to public safety.  Far from being absurd, . . . imposing harsher punishment on driving violations of section 10851 is entirely reasonable in this respect."

We conclude no absurd consequences follow from penalizing the post-theft driving of a low-value vehicle more severely than the theft of a low-value vehicle.

B. *Equal Protection*

Defendant asserts that the equal protection clauses of the United States and California Constitutions require applying the $950 threshold equally to vehicle theft and post-theft driving under section 10851.

7

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.) "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.) "The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment." (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

"Generally, offenders who commit different crimes are not similarly situated. [Citation.]" (*Morales*, *supra*, 33 Cal.App.5th at p. 808.) Here, the classification defendant identifies are people who have committed different crimes--theft of a low-value vehicle and post-theft driving of a low-value vehicle. (*Ibid*.; see also *People v. Garza*, *supra*, 35 Cal.4th at p. 880 [recognizing the distinction between the theft and non-theft forms of the section 10851 offense].) Defendant asserts without support that the two groups he identifies are similarly situated. But defendant fails to show that individuals convicted of different crimes with a different set of risks involved--as discussed *ante*--are similarly situated.

## II

### *Sufficiency of the Evidence*

Defendant next contends the evidence is insufficient to support his conviction for driving the car without consent because the prosecution failed to prove he had the specific intent to deprive the rightful owner of possession for any period of time. We disagree.

#### A. *Standard of Review*

To assess the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence to support the verdict--i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 352.) "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citations.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 143.) We do not reweigh evidence or reevaluate a witness's credibility. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

#### B. *Legal Background*

Pursuant to Vehicle Code section 10851, subdivision (a), a person commits the offense of unlawful driving of a vehicle when the person "drives . . . a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing." To complete the crime, a person must have "an intent to either permanently or temporarily

deprive [the] owner of his title to or possession of such vehicle.  The intent is made an affirmative element of the crime and consequently must be proved as a fact."  (*People v. Neal* (1940) 40 Cal.App.2d 115, 117.)

"The specific intent to deprive the owner of possession of his vehicle ' "may be inferred from all the facts and circumstances of the particular case." ' [Citation.]"  (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577.)  "Knowledge that the vehicle was stolen, while not an element of the offense, may constitute evidence of the defendant's intent to deprive the owner of title and possession.  [Citation.]  [¶]  Possession of recently stolen property itself raises a strong inference that the possessor knew the property was stolen; only slight corroboration is required to allow for a finding of guilt.  [Citation.]"  (*Id.* at p. 1574; see also *People v. Green* (1995) 34 Cal.App.4th 165, 181.)

However, "possession of recently stolen property, if uncorroborated, is . . . insufficient to establish the accused's guilt of a theft-related offense."  (*People v. Najera* (2008) 43 Cal.4th 1132, 1138.)  As the Supreme Court has explained, "there may be an innocent explanation for the circumstance of possession.  ' "The real criminal . . . may have artfully placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight, and found by the possessor, or have been taken from him in order to restore it to the true owner, or otherwise have come lawfully into his possession." ' [Citations.]"  (*Ibid.*)

C.  *Analysis*

Sufficient evidence supports the jury's finding that defendant intended to unlawfully drive the Honda after it had been stolen.  A police officer observed defendant driving a car that had been reported stolen two days earlier.  When defendant was arrested, he possessed a large keyring with approximately 15 keys.  Two of the keys defendant possessed were shaved, a tool used to gain access to and start older-model cars like the one at issue here.  Following his arrest, an officer started the car using one of the

10

shaved keys defendant possessed with "[n]o trouble at all."  The car's owner testified that he and his mother possessed the only legitimate keys to the car, which leads to the reasonable finding that defendant did not possess a legitimate key to the car.  We conclude the jury reasonably could have found defendant started the car using a shaved key, that he knew the shaved key was not a legitimate key to the car, and that he had the requisite criminal intent to drive a car he knew to be stolen.

We recognize no evidence showed that defendant participated in the initial theft of the car.  There were two other people in the house at the time of defendant's arrest and two other cars--neither of which had been reported stolen--in front of the house.  As defendant argues, it is possible that one of the residents asked defendant to move the car and defendant knew nothing about the car being stolen.  It is possible that defendant did not recognize the key as a shaved key.  Neither the vehicle identification number nor the car's license plate had been removed, suggesting defendant had nothing to hide.  Defendant neither made any incriminating statements nor fled from the scene.  These facts and possibilities would have given the jury valid reasons to find defendant not guilty of the charged offenses.  However, the existence of other possible conclusions does not alter the reality that possession of the car as well as possession of a shaved key that started the car when tested constitutes "slight corroboration," which, when added to the evidence that defendant accessed, started, and drove the car, was sufficient for the jury to find defendant guilty of unlawfully driving a vehicle.

III

*Senate Bill No. 136*

On October 8, 2019, the Governor signed Senate Bill No. 136 into law.  The new law, which became effective on January 1, 2020, amended section 667.5, subdivision (b).  (Stats. 2019, ch. 590, § 1.)  Prior to January 1, 2020, section 667.5, subdivision (b) imposed a one-year sentence enhancement for each separate prior prison term or county jail term imposed under section 1170, subdivision (h) where the defendant had not

11

remained free of custody for at least five years (§ 667.5, subd. (b)). Pursuant to Senate Bill No. 136, a one-year prison prior enhancement will now apply only if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

The parties agree, as do we, that defendant is entitled to the ameliorative benefit of the amendment because his sentence was not final when Senate Bill No. 136 took effect and because his prior offenses were not for sexually violent felonies. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [defendant entitled to retroactive application of criminal statute that takes effect during the time defendant has to appeal to the United States Supreme Court]; *In re Estrada* (1965) 63 Cal.2d 740, 742; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682.)

Accordingly, we modify the judgment to strike the three prior term enhancements and, because the trial court imposed less than the maximum aggregate sentence available, we "remand the matter for resentencing to allow the court to exercise its sentencing discretion in light of the changed circumstances." (*People v. Jennings*, *supra*, 42 Cal.App.5th at p. 682.)

IV

*Imposing The Upper Term On Count One*

Defendant contends the trial court abused its discretion by imposing the upper term of four years in prison for count one based on a misstatement of aggravating facts not in the record. We conclude the trial court did not abuse its discretion.

A. *Standard of Review*

We review a trial court's exercise of its discretion to impose the upper term sentence for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court abuses its discretion in selecting the upper term of a sentencing triad only where "it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citation.]" (*Ibid*.)

B. *Legal Background*

Penal Code section 1170, subdivision (b) provides in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . . ."

Rule of Court, rule 4.420(b) elaborates: "In exercising his or her discretion in selecting one of the three authorized terms of imprisonment referred to in [Penal Code] section 1170[,] [subdivision] (b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." Rule 4.420(e) adds: "The reasons for selecting one of the three authorized terms of imprisonment referred to in section 1170[,] [subdivision] (b) must be stated orally on the record." The Advisory Committee Comment to that rule clarifies: "[Penal Code] [s]ection 1170[,] [subdivision] (b) vests the court with discretion to impose any of the three authorized terms of imprisonment and requires that the court state on the record the reasons for imposing that term."

The court must state its reasons for selecting the upper term. (Cal. Rules of Court, rule 4.406(b)(4); Pen. Code, § 1170, subd. (c).) Trial courts may examine factors in aggravation and mitigation when exercising their sentencing discretion, and a single aggravating factor is sufficient to support a trial court's imposition of an upper term. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371.)

13

C. *Procedural Background*

Before determining whether it would impose the upper term for defendant's sentence, the trial court first denied defendant's motion to strike his previous strikes under *Romero*, *supra*, 13 Cal.4th 497. In making that ruling, the court stated, "[T]he problem is that we look back from 32 years old to almost 50 you've just committed crime after crime after crime. You keep stealing. In particular, you keep stealing cars. You've stolen a lot of cars, and you've been convicted many times, and you've been sentenced to prison many times over a period of 18 years. [¶] . . . [T]his seems to be your career, is stealing cars." The court then stated, "So I look at the nature of this present felony, and it is yet another car theft. . . . [¶] . . . [I]t's hard not to characterize you as a car thief. That's kind of what you do. That's what your main job seems to be. You are sort of a career car thief." The court denied defendant's *Romero* motion.[6]

Then the trial court turned to the sentence it would impose. The court found no circumstances in mitigation, but it found several factors in aggravation. The court found the manner in which the crimes were carried out indicated professionalism (Cal. Rules of Court, rule 4.421(a)(8)), defendant had previously engaged in violent conduct indicating a serious danger to society (*id.*, rule 4.421(b)(1)), defendant had numerous adult convictions (*id.*, rule 4.421(b)(2)), defendant was on post-release community supervision when he committed his offense (*id.*, rule 4.421(b)(4)), and defendant's prior performance on supervision was unsatisfactory (*id.*, rule 4.421(b)(5)). The court summarized, "there is no way honestly, when I look at your record, to give you anything other than an upper term in this case. . . . I am selecting in this case the upper term because you were on post-release community supervision when you committed this offense, and your prior performance on any supervision that you've had is entirely unsatisfactory."

---

[6] Defendant does not contest this ruling.

14

D. *Analysis*

Defendant contends the trial court's comments made during the ruling on his *Romero* motion demonstrate that the court considered improper factors when imposing the upper term for count one. But the record clearly shows the court considered at least two appropriate and applicable factors when imposing the upper term. In the conclusion to its remarks, the court stated it was imposing the upper term because defendant was on post-release community supervision when he committed his offense and that his prior performance on supervision was unsatisfactory. Defendant does not contend the court was incorrect in making those statements or that those factors are not applicable to the court's decision. Either one of those factors would be independently sufficient to impose the upper term. (*People v. Ortiz*, *supra*, 208 Cal.App.4th at p. 1371.) Defendant's claim lacks merit.

## DISPOSITION

We modify the judgment to strike defendant's three one-year prior prison term enhancements. As modified, the judgment is affirmed. The matter is remanded for resentencing not inconsistent with this opinion.

/s/
Duarte, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Renner, J.

15