Filed 6/25/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047221 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC438923) |
| v. | |
| MALIK ALAYBUE, | |
| Defendant and Appellant. | |

In November 2006, appellant Malik Alaybue pleaded no contest to two counts of second degree murder (Pen. Code, § 187)[1] and two counts of attempted murder (§§ 187, 664, subd. (a)). He also admitted a gang allegation (§ 186.22, subd. (b)(1)(C)) for each count. Appellant was sentenced to concurrent indeterminate terms of 15 years to life on the second degree murder convictions, consecutive to concurrent five-year determinate terms on the attempted murder convictions. In January 2019, appellant petitioned the trial court to vacate his murder and attempted murder convictions under newly enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). The trial court denied the petition. It found that Senate Bill 1437 was unconstitutional because it impermissibly amended Proposition 7 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978)) and Proposition 115 (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990)). The court also found that Senate Bill 1437 did not apply to the crime of attempted murder.

---

[1]     Subsequent references are to the Penal Code unless otherwise provided.

On appeal, appellant argues that Senate Bill 1437 did not amend Propositions 7 and 115, that its provisions do not violate the separation of powers doctrine, that it applies to attempted murder convictions, and that therefore he is entitled to resentencing on his murder and attempted murder convictions. Respondent Attorney General takes the position that Senate Bill 1437 is constitutional, but maintains that Senate Bill 1437 applies only to murder and does not apply to attempted murder. Amicus curiae District Attorney for the County of Santa Clara (the District Attorney) contends that Senate Bill 1437 is unconstitutional, both because it amends Propositions 7 and 115 and because it violates separation of powers principles.[2]

We conclude that Senate Bill 1437 is constitutional, as it does not amend Propositions 7 and 115 and it does not violate the separation of powers doctrine. However, we also determine that Senate Bill 1437 does not apply to the offense of attempted murder. Accordingly, we reverse the trial court's order denying the petition so that the court may reconsider appellant's petition, but only as to the murder convictions.

## I.  Procedural History

In January 2019, appellant filed a petition seeking to vacate his murder and attempted murder convictions under Senate Bill 1437. The District Attorney opposed the petition, arguing that Senate Bill 1437:  (1) unconstitutionally amended Proposition 7 and Proposition 115; (2) did not apply to attempted murder; and (3) violated the separation of powers doctrine. The parties stipulated that if Senate Bill 1437 was constitutional, then

---

[2]     The District Attorney has filed an unopposed motion for judicial notice of court documents related to this case, and legislative history documents for Propositions 7 and 115. We grant that motion. (Evid. Code, § 452, subds. (c), (d).)

"the petitioner in this case will be eligible [for] . . . re-sentencing" on his murder convictions.[3] As described above, the trial court denied the petition.

## II. Statutory Framework

### A. Proposition 7

Proposition 7 was approved by voters in 1978. The initiative increased the punishment for first and second degree murder by amending section 190. (*People v. Cruz* (2020) 46 Cal.App.5th 740, 753 (*Cruz*).) It also "sought to strengthen and expand California's death penalty with amendments to sections 190.1 through 190.5." (*Id.* at pp. 753-754.)

Prior to Proposition 7's passage, "a first degree murder conviction was punishable by life imprisonment with the possibility of parole after seven years," and a second degree murder conviction was punishable by a term of five, six, or seven years in prison. (*Cruz, supra*, 46 Cal.App.5th at p. 754.) Proposition 7 increased the punishment for first degree murder to life imprisonment with the possibility of parole after 25 years. The penalty for second degree murder was increased to life imprisonment with the possibility of parole after 15 years. (*Cruz*, at p. 754.)

### B. Proposition 115

Proposition 115 was approved by voters in 1990. Pertinent here, it amended section 189, which defines the degrees of murder and addresses felony-murder liability. Proposition 115 added kidnapping, train wrecking, and certain sex offenses to the list of

---

[3] After briefing was completed, the Attorney General submitted a letter to this court stating that if the case is remanded, the District Attorney intends to "withdraw its stipulation regarding appellant's eligibility for relief under [Senate Bill] 1437 based on new investigations." The validity of the stipulation is not at issue in this appeal. We express no opinion as to whether the trial court may or should allow the District Attorney to withdraw his stipulation on remand.

3

predicate felony offenses in section 189 that qualify for first degree felony murder. (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 278 (*Gooden*).)

"Proposition 115 also 'revised the scope of capital liability for aiding and abetting felony murders' by amending section 190.2 to indicate that for first degree felony murder ' "every person, not the actual killer, who, with reckless indifference to human life and as a major participant" aids or abets the crime may be convicted of special circumstance murder.' [Citation.]" (*Cruz, supra*, 46 Cal.App.5th at p. 759.)

## C. Senate Bill 1437

Senate Bill 1437, which became effective January 1, 2019, was enacted based on the Legislature's express finding that "[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.) It did so by amending section 188, which defines malice aforethought, and section 189, which addresses felony-murder liability. (Stats. 2018, ch. 1015, §§ 2 & 3.)

Section 187, which was not amended by Senate Bill 1437, defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought." Section 188 defines "malice" "[f]or purposes of Section 187." Section 188 provides that "malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(1)-(2).) Senate Bill 1437 added subdivision (a)(3) to section 188, which now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime

4

shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." In so doing, the Legislature stated in the uncodified statutory findings and declarations that it intended that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1.)

Senate Bill 1437 also added section 189, subdivision (e), which provides that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Finally, Senate Bill 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction. To do so, all of the following conditions must apply: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of [the] changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

If the petitioner is found eligible for relief, the conviction is vacated and the petitioner is resentenced "on any remaining counts in the same manner as if the petitioner

5

had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) If "murder was charged generically, and the target offense was not charged," then the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes." (§ 1170.95, subd. (e).)

## III. Discussion

### A. Constitutionality of Senate Bill 1437

"We review de novo questions of interpretation and constitutionality of a statute." (*Finberg v. Manset* (2014) 223 Cal.App.4th 529, 532.)

The California Constitution prohibits the Legislature from amending or repealing a voter initiative, unless the initiative so provides. (Cal. Const., art. II, § 10, subd. (c).) " '[T]he purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." [Citations.]' " (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025.)

Our high court has "described an amendment" to an initiative "as 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' [Citation.]" (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 (*Pearson*).) The court has cautioned, however, that not all legislation concerning "the same subject matter as an initiative . . . is necessarily an amendment" to the initiative. (*Ibid.*) Rather, " '[t]he Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' " (*Ibid.*) Thus, in deciding whether certain legislative action amends a voter initiative, a reviewing court must "ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Ibid.*) "In resolving

6

[this] question, we must decide what the voters contemplated" in passing the initiative. (*Ibid.*) "'[T]he voters should get what they enacted, not more and not less.' [Citation.]" (*Ibid.*)

Resolving this question of what the voters contemplated requires statutory interpretation. "When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, *supra*, 48 Cal.4th at p. 571.)

### 1. Senate Bill 1437 Did Not Amend Proposition 7

The District Attorney contends that Senate Bill 1437 unconstitutionally amended Proposition 7 by "redefining what constitutes the crime of first or second degree murder . . . in a manner that reduces the sentences for the conduct incorporated by Proposition 7."

To determine whether Senate Bill 1437 amended Proposition 7, we first must look at the plain language of Proposition 7 to determine what the voters contemplated in passing the initiative. In this respect, the language is unambiguous—Proposition 7 repealed section 190 and sections 190.1 through 190.5 and enacted new versions of those statutes. The changes made by Proposition 7 lengthened prison sentences and expanded the circumstances in which the death penalty applies.[4] Thus, in passing Proposition 7, we

---

[4] The version of section 190 enacted by Proposition 7 read: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life . . . .

presume the voters intended to lengthen prison sentences and expand the use of the death penalty.

The crucial question, then, it whether Senate Bill 1437 prohibited what Proposition 7 authorized, or authorized what it prohibited. We conclude that it did not. Put simply, Senate Bill 1437 addressed the scope of accomplice liability for murder, limiting application of the felony-murder rule and the natural and probable consequences doctrine. In so doing, it altered the elements of first and second degree murder, not the attendant punishment. The Legislature was free to address the scope of accomplice liability for murder—a related but distinct area of the law—so long as it did not prohibit what Proposition 7 authorized, or authorize what the initiative prohibited. Senate Bill 1437 did not change the punishment provisions authorized by Proposition 7, and thus it did not unconstitutionally amend Proposition 7.

Notwithstanding the plain language of Proposition 7, the District Attorney argues that the voters intended to incorporate and fix the definitions of first and second degree murder, as they existed in 1978, into the initiative. The District Attorney points to Proposition 7's use of the phrases " 'murder in the first degree' and 'murder in the second degree' " as indicative of an intent to incorporate those definitions into the initiative. In so arguing, the District Attorney relies on a statutory construction principle articulated in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 (*Palermo*).

" 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference

---

[¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." Proposition 7 also enacted new versions of sections 190.1 through 190.5, which set forth the procedures for dealing with special circumstance allegations and for determining the penalty after a true finding on a special circumstance allegation.

and not as subsequently modified . . . .'" (*Palermo*, *supra*, 32 Cal.2d at pp. 58-59.) "'[W]here the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .'" (*Id.* at p. 59.) "Moreover, where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be . . . legislative intent . . . .'" (*In re Jovan B.* (1993) 6 Cal.4th 801, 816.)

In *People v. Hernandez* (2003) 30 Cal.4th 835 (*Hernandez*), disapproved on another point by *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32, the court considered whether the phrase, "'the punishment shall be that *prescribed for murder in the first degree*,'" was intended "to fix the penalty permanently at the punishment for first degree murder as it existed" when the statute was passed. (*Hernandez*, at pp. 864-865.) Applying the *Palermo* rule, the court concluded that the Legislature did not intend to permanently fix the punishment for first degree murder because the reference was general, not specific. (*Hernandez*, at p. 865.) "Because [the statute] refers generally to the punishment prescribed for murder in the first degree, it incorporates whatever punishment the law prescribed for first degree murder" when the statute was violated. (*Ibid.*)

In this case, the District Attorney identifies Proposition 7's references to "murder in the first degree" and "murder in the second degree" as incorporating those definitions into the initiative. This language, however, is nearly indistinguishable from the language that the *Hernandez* court concluded did not incorporate the definition into the statute. Applying the *Palermo* rule, we conclude that the references to "murder in the first degree" and "murder in the second degree" were general and not specific. Thus, they did not incorporate those definitions, as they existed in 1978, into Proposition 7. Because

9

those definitions were not incorporated by reference into Proposition 7, Senate Bill 1437 did not unconstitutionally amend the initiative.

## 2. Senate Bill 1437 Did Not Amend Proposition 115

The District Attorney argues that Senate Bill 1437 unconstitutionally amended Proposition 115. He argues it did so by adding subdivision (e) to section 189, which he contends had the effect of "requiring additional elements for a first degree felony murder conviction not previously present for" the predicate felony crimes that were "added by Proposition 115."

As with Proposition 7, we conclude that Senate Bill 1437 did not unconstitutionally amend Proposition 115. Proposition 115 amended section 189 to add five additional serious felonies (kidnapping, train wrecking, sodomy, oral copulation, and sexual penetration) to the list of predicate felonies for first degree felony murder.[5] Senate Bill 1437, on the other hand, amended section 189 by adding subdivision (e), which imposed a mens rea and actus reus requirement for accomplice liability for first degree felony murder. While Senate Bill 1437 undoubtedly concerned the same subject matter as Proposition 115—namely felony murder under section 189—the pertinent question is whether Senate Bill 1437 prohibited what Proposition 115 authorized, or authorized what the initiative prohibited. In this case, Senate Bill 1437 clearly did not add to or otherwise modify the list of predicate felonies leading to felony murder liability. Rather, it addressed accomplice liability for felony murder, a related but distinct area of the law that the Legislature was undoubtedly free to address.

---

[5]     Proposition 115 amended section 189 to add the language that we set forth in italics: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, *kidnapping*, *train wrecking*, or any act punishable under Section *286*, 288, *288a*, *or 289*, is murder of the first degree and all other kinds of murders are of the second degree."

The District Attorney also argues that Senate Bill 1437 contradicts the implied intent of the voters who approved Proposition 115. The District Attorney notes that Proposition 115 amended section 190.2 to extend death penalty eligibility to aiders and abettors of first degree felony murder in specified circumstances. As amended by Proposition 115, section 190.2 provides that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant" aids or abets the felony murder may be subject to a capital murder special circumstance. (§190.2, subd. (d).) The District Attorney observes that this language is "nearly identical" to the language added to section 189, subdivision (e) by Senate Bill 1437. Thus, he argues that "[t]he voters' addition of the major participant/reckless indifference language to . . . section 190.2, subdivision (d), without a similar reference in section 189, was intentional," and that by later amending section 189 to add the major participant/reckless indifference requirement, the Legislature contravened the voters' implied intent.

In making this argument, the District Attorney relies on a maxim of statutory construction, *expressio unius est exclusio alterius*—meaning, "the expression of one thing in a statute ordinarily implies the exclusion of other things." (*In re J.W.* (2002) 29 Cal.4th 200, 209.) His reliance on this maxim is misplaced. The principle is not applied in isolation, without regard to "legislative history or other evidence of legislative intent," but rather must be considered with regard to "other indicia of legislative intent." (*Ibid.*) Indeed, courts should "not apply the *expressio unius est exclusio alterius* principle 'if its operation would contradict a discernable and contrary legislative intent.' [Citations.]" (*Id.* at pp. 209-210.)

Here, the ballot materials reflect that the stated purpose of changing section 190.2 was to "improve [California's] death penalty law and overturn decisions by Rose Bird and her allies which made it nearly inoperative." (Ballot Pamp., Primary Elec. (June 5, 1990) argument in favor of Prop. 115, p. 34; see *People v. Banks* (2015) 61 Cal.4th 788,

11

798 (*Banks*).) Prior to Proposition 115, "state law made only those felony-murder aiders and abettors who intended to kill eligible for a death sentence." (*Banks*, at p. 798.) "Proposition 115 revised the scope of capital liability for aiding and abetting felony murders by" referencing federal law, from which the term "'major participant'" was borrowed. (*Ibid.*) Section 190.2 thus imposed "both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*Banks*, at p. 798.) The clear intent of voters in amending section 190.2 was to expand the scope of capital liability in certain felony-murder cases to the extent permissible under federal law. There is no basis for, as the District Attorney contends, concluding that the voters also intended that the same "major participant" and "reckless indifference" language for accomplice liability could *never* be added to section 189.

### 3. Senate Bill 1437 Does Not Violate Separation of Powers Principles

The District Attorney argues that Senate Bill 1437 violates separation of powers principles by interfering with the executive's prosecutorial functions and the finality of judgment. As to prosecutorial functions, the District Attorney points to section 1170.95's provision requiring the sentencing court to "redesignate [the murder conviction] as the target offense or underlying felony for resentencing purposes." He contends that "[t]o permit the judiciary to select from an array of possible crimes is not authorized" and thus violative of the separation of powers doctrine.

"[T]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by [the state] Constitution." (*People v. Birks* (1998) 19 Cal.4th 108, 134.) "[T]he prosecution of crimes is recognized as an executive function, vesting in our state's prosecutors the discretion to control and determine whom to charge and what charges to bring. [Citation.] Thus, under the separation of powers doctrine, our state's courts must

12

avoid interfering with the executive's prosecutorial functions, including the exercise of its broad charging discretion." (*People v. Solis* (2015) 232 Cal.App.4th 1108, 1122.)

Here, section 1170.95's resentencing procedure does not interfere with the executive's prosecutorial functions. The plain language of section 1170.95, subdivision (e) permits the trial court to redesignate the vacated conviction as either "the target offense," in cases involving the natural and probable consequences doctrine, or "the underlying felony," in cases involving the felony-murder rule. In both instances, a prosecutor has already exercised his or her discretion to "control and determine whom to charge and what charges to bring," because the prosecutor necessarily identified the target offense or predicate felony in the underlying prosecution. (*People v. Prettyman* (1996) 14 Cal.4th 248, 254, 269 & fn. 9.) Thus, section 1170.95's resentencing procedure, by its own terms, is limited to offenses that the prosecutor already determined should be presented to the fact finder, either as a predicate felony or as a target offense. Because of this, section 1170.95 does not violate separation of powers principles with regard to the executive's prosecutorial functions.

The District Attorney also argues that section 1170.95 interferes with the finality of judgment. He principally relies on *People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*), its companion case *People v. King* (2002) 27 Cal.4th 29 (*King*), and *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211 (*Plaut*), a case on which both *Bunn* and *King* relied. His reliance on these cases is misplaced.

"At issue in *Bunn* and *King* were statutory amendments reviving certain child molestation prosecutions that had been dismissed as time-barred by the then existing statute of limitations. [Citation.] The new law not only revived time-barred cases that had never been prosecuted, it also applied to prosecutions that had been dismissed pursuant to the previous limitations period." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 180 (*Perez*).) The issue as framed by the California Supreme Court was as follows:

13

"[The Legislature] authorize[d] . . . the filing of a molestation charge even where an accusatory pleading involving the same offense was previously dismissed as time-barred by the courts.  The question is whether, and to what extent, the separation of powers clause of the California Constitution (art. III, § 3) precludes application of such a refiling provision." (*Bunn*, *supra*, 27 Cal.4th at p. 5.)  Our high court held that such refiling provisions "cannot be retroactively applied to subvert judgments that became final before the provision took effect . . . ." (*Id.* at p. 24.)  Thus, the rule in *Bunn* and *King* focused solely on the Legislature's ability to revive causes of action that had been dismissed as time-barred by enacting a new limitations period. (*Perez*, at p. 177 [summarizing *Bunn* and *King*]; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 260 ["[T]he matter at hand was whether the People could rely on refiling legislation to reprosecute a defendant who obtained a judgment of dismissal that became final prior to the effective date of the refiling legislation."] (*Lamoureux*).)

"In *Plaut*, plaintiffs filed a fraud action in federal court based on alleged violations of the federal securities laws. [Citation.]  At the time, federal courts were required to '"borrow[ ]"' the analogous state statute of limitations in the jurisdiction in which the action was pending. [Citation.]  However, after the plaintiffs filed their case, the United States Supreme Court issued" a pair of decisions that "adopted a uniform federal limitations rule shorter than the one on which the plaintiffs relied and applied the new statute of limitations retroactively. [Citation.]" (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 257.)  Based on those decisions, the district court dismissed the plaintiffs' case as untimely and the judgment became final. (*Ibid.*)  Congress thereafter passed legislation "repudiating the retroactive effect of the new limitations period" and restoring the prior limitations period. (*Ibid.*)  The legislation also provided for reinstatement of dismissed actions.  The plaintiffs sought reinstatement, but the district court dismissed the case on

14

the grounds that the refiling provision violated the separation of powers doctrine. (*Id.* at p. 258.)

The United States Supreme Court affirmed the dismissal. The *Plaut* court found the reinstatement legislation to be "a clear violation" of federal separation of powers principles: "It is, of course, retroactive legislation, that is, legislation that prescribes what the law *was* at an earlier time, when the act whose effect is controlled by the legislation occurred . . . . When retroactive legislation *requires* its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.'" (*Plaut*, *supra*, 514 U.S. at p. 225, second italics added.) According to the court, the retroactive legislation at issue upset "[t]he rules of finality, both statutory and judge made," which the court listed by way of example: "a dismissal on statute-of-limitations grounds," or "a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute . . . ." (*Id.* at p. 228.)

This case, unlike *Bunn*, *King*, and *Plaut*, does not involve legislative action to revive causes of action that were previously dismissed, nor does it *require* its own application in a case. Rather, section 1170.95 merely provides that petitioners whose convictions were based on the felony-murder rule or the natural and probable consequences doctrine "may" petition the trial court for sentencing relief. It does not provide for automatic relief from any previously adjudicated murder conviction, and grants sole power to the judiciary to determine whether such petitioners are entitled to relief under the law. In addition, unlike *Bunn*, *King*, and *Plaut*, section 1170.95 is an exercise of legislative lenity, rather than an attempt to reinstate causes of action that had previously been dismissed. (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 258-261.) In short, section 1170.95 represents an appropriate exercise of the Legislature's power to permit judicial revision of final judgments to reduce punishment for those convicted of

15

murder offenses under the felony-murder rule or natural and probable consequences doctrine.

Such legislation is not uncommon. Indeed, it "appears settled that a final judgment is not immune from the Legislature's power to adjust prison sentences for a legitimate public purpose." (*In re Chavez* (2004) 114 Cal.App.4th 989, 1000; *People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 800 [it is "settled that legislation reducing punishment for crime may constitutionally be applied to prisoners whose judgments have become final"]; see also *Way v. Superior Court* (1977) 74 Cal.App.3d 165, 177 [upholding retroactive application of reduced punishments under Uniform Determinate Sentencing Act to final judgments].) "[T]here is substantial precedent for remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants." (*Lamoureaux*, *supra*, 42 Cal.App.5th at pp. 262-263 [summarizing such legislation].) The prevalence of such legislation all but "confirms there is nothing especially unique about section 1170.95," as it represents "a legitimate and ordinary exercise of legislative authority." (*Id.* at p. 263.) Thus, we conclude that section 1170.95 does not violate separation of powers principles.

In summary, we find Senate Bill 1437 to be constitutional. Because the trial court found that Senate Bill 1437 was unconstitutional, the court erred in rejecting appellant's section 1170.95 petition for resentencing of his murder convictions on that basis.

### B. Senate Bill 1437 Does Not Apply to Attempted Murder

At issue here is whether Senate Bill 1437's abrogation of the use of the natural and probable consequences theory in murder prosecutions also applies to attempted murder. The question of whether Senate Bill 1437 applies to the crime of attempted murder has divided the Courts of Appeal. (*People v. Munoz* (2019) 39 Cal.App.5th 738, 753, review granted Nov. 26, 2019, S258234 [does not apply]; *People v. Lopez* (2019) 38 Cal.App.5th

16

1087, 1103, review granted Nov. 13, 2019, S258175 [does not apply]; *People v. Dennis* (2020) 47 Cal.App.5th 838, 844-847 [does not apply]; *People v. Larios* (2019) 42 Cal.App.5th 956, 964-968, review granted Feb. 26, 2020, S259983 [does apply]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1013-1016, review granted March 11, 2020, S259948 [does apply]; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642-644, review granted June 10, 2020, S261768 [does apply].) As we explain, we conclude that Senate Bill 1437 does not apply to attempted murder.

"We exercise de novo review when we engage in statutory construction." (*People v. Brackins* (2019) 37 Cal.App.5th 56, 65.) "Statutory construction begins with the plain, commonsense meaning of the words in the statute, '"because it is generally the most reliable indicator of legislative intent and purpose."' [Citation.] 'When the language of a statute is clear, we need go no further.'" (*People v. Manzo* (2012) 53 Cal.4th 880, 885.) Where the language of the statute is potentially ambiguous, "'[i]t is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation.' [Citation.]" (*Id.* at p. 886.)

Here, the language of Senate Bill 1437 is clear and unambiguous. Senate Bill 1437 amended section 188, the definition of malice for purposes of first and second degree murder, to provide: "Except as stated in subdivision (e) of Section 189, *in order to be convicted of murder*, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.) The second sentence, that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime," is expressly limited by the preceding language, which limits this new rule to murder convictions. It is well established that "'[a]n attempt is an offense "separate" and "distinct" from the completed crime.'" (*People v. Lewis* (2006) 146 Cal.App.4th 294, 298.) A statute that

17

"expressly identifies the offenses within its scope, all of which are completed offenses," is not ambiguous; "[h]ad the Legislature meant to include attempts among the covered offenses, it could easily have done so as it has done in other instances." (*People v. Jillie* (1992) 8 Cal.App.4th 960, 963.)

Further confirmation that Senate Bill 1437 does not apply to attempted murder is found in section 1170.95, which was added by Senate Bill 1437 and sets forth the resentencing procedure for persons who "could not be convicted of *first or second degree murder* because of [the] changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a), italics added.) By its plain terms, only persons "convicted of felony *murder or murder* under a natural and probable consequences theory may file a petition . . . ." (*Ibid.*, italics added.) Further, the statute allows the petitioner to seek only to "have [his or her] *murder* conviction vacated and to be resentenced on any remaining counts . . . ." (*Ibid.*, italics added.) Similarly, subdivision (d)(1) of section 1170.95 permits the trial court to conduct a hearing "to determine whether to vacate the *murder* conviction," (italics added), while subdivision (d)(2) permits the parties to "stipulate that the petitioner is eligible to have his or her *murder* conviction vacated . . . ." (Italics added.) The repeated references to murder convictions in section 1170.95, as opposed to attempted murder convictions, make clear that Senate Bill 1437's ameliorative benefit was meant to reach only the completed offense of murder, not the distinct offense of attempted murder.

As the plain language of the statute is clear, we need not look at the legislative history. But even if we did proceed to inquire further, the legislative history of Senate Bill 1437 confirms that the statute was not intended to reach attempted murder. In the uncodified findings and declarations, the Legislature stated, in relevant part, that "[i]t is necessary to amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*, to ensure that *murder liability* is not imposed on a

person who is not the *actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) § 1, italics added.) In discussing the potential number of persons who may petition for relief, the Senate Committee on Appropriations indicated that it would be difficult to determine the basis for a murder conviction, "[a]s the abstract of judgment reflects only the degree of conviction for *murder . . . .*" (Sen. Com. on Appropriations, May 14, 2018 Report on Sen. Bill No. 1437 (2017-2018 Reg. Sess.), as introduced February 16, 2018, p. 3, italics added.) The report went on to describe the "overall population in state prison for a *murder conviction*," and did so by tallying up "inmates [who] were serving a term for the princip[al] offense of *first-degree murder*" and "*second-degree murder*." (*Ibid.*, italics added.)

An amendment to Senate Bill 1437 that was made during the legislative process further makes clear that the law was intended to apply only to those convicted of murder. As originally introduced, Senate Bill 1437 stated that "[a] defendant may submit a request for resentencing when all of the following conditions apply," and then listed the three necessary conditions that were later codified in section 1170.95. (Sen. Bill No. 1437 (2017-2018 Reg. Sess.), as introduced on February 16, 2018.) The bill was later amended to replace the phrase beginning with "a defendant" with the phrase instead beginning with "a person *convicted of felony murder or murder* under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's *murder conviction* vacated and to be resentenced on any remaining counts" when the three necessary conditions were met. (Sen. Bill. No. 1437 (2017-2018 Reg. Sess.), as amended on August 20, 2018, § 4, italics added.) This amended language, expressly referring to "murder" convictions, is what was ultimately enacted. In addition, the original version of Senate Bill 1437 did not include the prefatory language now included in section 188, subdivision (a)(3), that "in order to be

19

convicted of murder, a principal in a crime shall act with malice aforethought." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.), as introduced on February 16, 2018, § 1.) This language was added by amendment. This change too confirms that the prohibition on the imputation of malice was meant to reach only the completed offense of murder.

Appellant argues that "not applying [Senate Bill] 1437 to attempted murder would lead to absurd results." We disagree. While the literal meaning of the words in a statute "'"""may be disregarded to avoid absurd results,"'"'"" courts should do so only "'in "'*extreme* cases . . . .'"'" [Citation.]" (*People v. Morales* (2019) 33 Cal.App.5th 800, 806.) "To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable that the Legislature could not have intended them." (*In re. D.B.* (2014) 58 Cal.4th 941, 948.) Such is not the case here. In deciding to omit attempted murder from the ambit of Senate Bill 1437, the Legislature could have reasonably concluded that the need to address sentencing reform was more appropriately directed at persons convicted of murder as opposed to attempted murder. This is so because the punishment for attempted murder is generally far less than the punishment imposed for murder.

The punishment for first degree murder is either death, life in prison without the possibility of parole, or an indeterminate term of 25 years to life. (§ 190, subds. (a), (e).) The punishment for second degree murder is an indeterminate term of 15 years to life. (§ 190, subds. (a), (e).) In contrast, attempted murder is punishable by a determinate term of five, seven, or nine years in prison. (§ 664, subd. (a).) And even premeditated attempted murder is punishable only by a sentence of life with the possibility of parole after seven years. (§§ 664, subd. (a), 3046, subd. (a)(1).)

Because the punishment for murder is so much more severe than the punishment for attempted murder, the Legislature may have wished to limit Senate Bill 1437's ameliorative reforms to those instances where it perceived the disconnect between

20

culpability and punishment to be most glaring.  It is not our place to judge the wisdom, fairness, or logic of the Legislature's decision to omit attempted murder from Senate Bill 1437's ambit.  We do not find the plain meaning of Senate Bill 1437 to be absurd, much less so absurd in its results that we would be permitted to disregard the literal language used in the statute.

## IV.  Disposition

The superior court's order is reversed, and the matter is remanded with directions to consider appellant's section 1170.95 petition as to his murder convictions.

_____

Mihara, J.

WE CONCUR:


_____

Elia, Acting P. J.



_____

Bamattre-Manoukian, J.



People v. Alaybue
H047221

22

Trial Court:                                    Santa Clara County Superior Court


Trial Judge:                                    Honorable Griffin M.J. Bonini


Attorney for Defendant and Appellant:           Michael C. Sampson
                                                Under Appointment by the Sixth District
                                                Appellate Program


Attorneys for Plaintiff and Respondent:         Xavier Becerra
                                                Attorney General of California

                                                Lance E. Winters
                                                Chief Assistant Attorney General

                                                Jeffrey M. Laurence
                                                Senior Assistant Attorney General

                                                Eric D. Share
                                                Supervising Deputy Attorney General

                                                Leif M. Dautch
                                                Deputy Attorney General


Attorneys for Amicus Curiae:                    Jeffrey F. Rosen
                                                District Attorney, County of Santa Clara

                                                David R. Boyd
                                                Deputy District Attorney




People v. Alaybue
H047221